In re **PHILADELPHIA ATHLETIC CLUB, INC., Debtor.**

**Bankruptcy No. 80–02028G.**

United States Bankruptcy Court, E. D. Pennsylvania.

Feb. 1, 1982.

Melvin Lashner, Adelman & Lavine, Philadelphia, Pa., for trustee.

Marjorie O. Rendell, Duane, Morris & Heckscher, Philadelphia, Pa., for trustees of Central States, Southeast and Southwest Areas Pension Fund, First Mortgagee.

Pace Reich, Pincus, Verlin, Hahn, Reich & Goldstein, Philadelphia, Pa., for debtor, Philadelphia Athletic Club, Inc.

Morton Newman, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Second Mortgagee, Continental Bank.

Stuart H. Savett, Kohn, Savett, Marion & Graf, P. C., Philadelphia, Pa., for Elias H. Stein and Leon W. Silverman, Objecting Parties.

Edwin M. Goldsmith, III, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for Philadelphia College For the Performing Arts.

Charles V. Stoelker, Jr., Meehan & Stoelker, Philadelphia, Pa., for Philadelphia Elec. Co.

Samuel Brodsky, Philadelphia, Pa., trustee.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The facts of this case are briefly:[1] On August 18, 1980, Philadelphia Athletic Club, Inc. ("the debtor") filed a petition for a reorganization under chapter 11 of the Bankruptcy Code ("the Code"). The debtor remained in possession and continued to manage its main asset: the Philadelphia Athletic Club building at 306–20 North Broad Street, Philadelphia, Pennsylvania. On November 5, 1980, the first mortgagee[2] on that property filed a complaint for relief from the automatic stay to permit it to proceed with mortgage foreclosure proceedings. After extensive negotiations, the first mortgagee and the debtor in possession entered into a stipulation ("the first stipulation") settling that complaint. Notice of that stipulation was sent to all creditors and on April 29, 1981, there being no objection, we entered an order approving the first stipulation.

Thereafter, on October 14, 1981, on application of Elias H. Stein and Leon W. Silverman,[3] we appointed Samuel M. Brodsky as trustee pursuant to § 1104(a) of the Code. Pursuant to the terms of the first stipulation, a payment of approximately $14,000.00 was due to the first mortgagee on November 1, 1981, or within the ten-day grace period from that date. The trustee failed to tender any payment for the month of November to the first mortgagee until after November 10, 1981,[4] nor did any other party tender payment to the first mortgagee within that time period.[5] Consequent-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. The first mortgagee is the Trustees of Central States, Southeast and Southwest Areas Pension Fund.

3. Stein and Silverman assert that they are partners in a partnership which owns 100% of the stock of the debtor.

4. On or about November 25, 1981, the trustee tendered a check (dated November 27, 1981) for the November payment. The first mortga-

gee refused to accept that check and it is presently being held by the attorney for the first mortgagee pending a decision by the court on the approval of the second stipulation.

5. On November 18, 1981, the Philadelphia College of the Performing Arts ("the College") tendered a check in the amount of the November payment to the agent of the first mortgagee. The first mortgagee refused to accept that check and it was returned to the College that day.

ly, the first mortgagee has taken the position that there was a default under the terms of the first stipulation, that it was not required thereunder to accept any late tender of payments, that it was free to proceed with mortgage foreclosure proceedings against the property and that the debtor and trustee could not raise any defenses in any court to that action. Thereafter, the first mortgagee and the trustee entered into negotiations and executed a second stipulation. It is for approval of that second stipulation that the trustee has now applied to this court. The debtor and Stein and Silverman have objected to the approval of that stipulation on several grounds, two of which are now before us.

■ The first ground raised by the debtor and Stein and Silverman is that the trustee, not being a signatory to the first stipulation, is not bound by its terms, and therefore, need not enter into the second stipulation since he is free to raise a defense in this court and/or the state courts to the foreclosure proceedings brought by the first mortgagee. We disagree. First, although the trustee was not a signatory to the first stipulation, that stipulation states that "This stipulation shall be binding on the Debtor, its successors and assigns."[6] We conclude that the trustee is a successor to the debtor in possession and is, in general, bound by the terms of any contract executed by the debtor while it was the debtor in possession. This is evident from the Code. Section 1107(a) of the Code provides that:

(a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, *a debtor in possession shall have all the rights,* other than the right to compensation under section 330 of this title, *and powers, and shall perform all the functions and duties,* except the duties specified in sections 1106(a)(2), (3), and (4) of this title, *of a trustee serving in a case under this chapter.*

11 U.S.C. § 1107(a) (emphasis added).[7] There is no question that the debtor in possession herein had the right and power to enter into the first stipulation. *See id.* and Rule 919 of the Rules of Bankruptcy Procedure. To hold that such a stipulation is not binding on the estate after the appointment of a trustee would greatly impair the ability of the debtor in possession to conduct its business because it would discourage third parties from dealing with the debtor in possession for fear that the court would later appoint a trustee and declare that the actions taken by the debtor in possession are invalid and not binding on the trustee. Such a result is inconsistent with the purpose of chapter 11 of the Code to allow the debtor in possession to conduct its business and formulate a successful plan of reorganization, if possible. Although there might be occasions when the court should scrutinize actions taken by and/or contracts made by a debtor while in possession (as, for example, where there is evidence of fraud or prejudice to the estate), there are no allegations in this case that the actions of the debtor in entering into the first stipulation were fraudulent or in any way not of benefit to the estate. Therefore, we conclude that the trustee is bound by the terms of that first stipulation.

■ The second ground raised by the debtor and Stein and Silverman in objecting to the trustee's application for approval of the second stipulation is that there was not such a substantial default of the first stipulation as to entitle the first mortgagee

---

**6.** See Exhibit P–1, ¶ 12 of the first stipulation.

**7.** The legislative history to § 1107(a) states, in part:

This section places a debtor in possession in the shoes of a trustee in every way. The debtor is given the rights and powers of a chapter 11 trustee. He is required to perform the functions and duties of a chapter 11 trustee (except the investigative duties). He

is also subject to any limitations on a chapter 11 trustee, and to such other limitations and conditions as the court prescribes *cf. Wolf v. Weinstein,* 372 U.S. 633, 649–650, 83 S.Ct. 969, 979, 10 L.Ed.2d 33 (1963).

S.Rep.No. 95–989, 95th Cong., 2d Sess. 116 (1978). *See also,* H.R.Rep.No. 95–595, 95th Cong., 1st Sess. 404 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787.

to proceed with mortgage foreclosure proceedings. We disagree. The evidence presented at the hearing held herein was uncontradicted that no tender of the November payment was made to the first mortgagee until *after* November 10, 1981. This was clearly a default under the terms of the first stipulation.[8]

The debtor and Stein and Silverman assert, however, that that default was merely a technical default and that the tender of payment by the College on November 18 and/or by the trustee on November 25 cured that default. They assert further that, because the detriment to the estate [9] outweighs the harm caused the first mortgagee by the lateness of the November payment, the bankruptcy court, as a court of equity, should enjoin the first mortgagee from foreclosing on its mortgage. We disagree with the contentions of the debtor and Stein and Silverman. By the terms of the first stipulation,[10] the debtor and the trustee have waived their rights to stay or forestall, in any way, the foreclosure proceedings brought by the first mortgagee in the event of default. Therefore, we conclude that they are precluded from raising any defense, in this court or in the state courts, based on equitable grounds or on the allegedly technical nature of the default. The cases cited by Stein and Silverman in support of their argument are inapposite because those cases deal with the rights of parties under a mortgage, *not* with the rights of parties under a stipulation, approved by the bankruptcy court, whereby one party has waived its right to raise any defense on the occurrence of a default.

Based on the above, we conclude that the trustee is bound by the terms of the first stipulation and that there was a default of that stipulation whereby the first mortgagee was entitled to proceed with mortgage foreclosure proceedings. Therefore, the continued hearing set for the consideration of the other grounds raised by the debtor and by Stein and Silverman in objecting to the trustee's application for approval of the second stipulation will be held as scheduled.

---

8. *See* Exhibit P–1, ¶s 3 and 5 of the first stipulation.

9. The detriment to the estate is that the second stipulation requires the trustee to sell the Philadelphia Athletic Club building free and clear of the first mortgage, whereas, under the first stipulation and the mortgage, the trustee would have been able to sell the property subject to the first mortgage (which has a 6¼% interest rate).

10. *See* Exhibit P–1, ¶ 5 of the first stipulation.